F. L. DOKE ET AL. V. TRINITY & BRAZOS VALLEY RAILWAY COMPANY.

Decided March 26, 1910.

**1.—Landlord—Interest in Crop—Right of Action.**

A landlord who is to receive as rental for his land a part of the crop raised by the tenant, has such an interest in the crop as will support an action against a railroad company for damage to the crop by overflow.

**2.—Railroad—Flooding Land—Partial Liability.**

If a railroad company either constructs an embankment partly on its right of way, or maintains such an embankment when constructed by another, the company would be liable for such part of the damages as might be caused by overflows resulting from such part of the embankment.

Appeal from the District Court of Hill County. Tried below before Hon. W. C. Wear.

*W. E. Spell, Hardy L. Davis* and *Luther Nickels,* for appellant. —The court erred in his second paragraph of his charge to the jury. Gulf, C. & S. F. Ry. Co. v. Caldwell, 102 S. W., 461; Cabell v. Hamilton-Brown Shoe Co., 81 Texas, 107.

*Andrews, Ball & Streetman* and *Morrow & Smithdeal,* for appellee.—The land claimed to have been overflowed having been leased to tenants for the years 1906, 1907 and 1908, right of action for injury to the crops existed only in the tenants, and it was not error for the court to charge the jury that the plaintiff could not recover for such damages. Texas & P. Ry. Co. v. Bayliss, 62 Texas, 575; Horseley v. Moss, 5 Texas Civ. App., 341; Missouri, K. & T. Ry. Co. v. Fulmore, 26 S. W., 238; 18 Am. & Eng. Ency. Law, 452, and note.

It not having been alleged that the embankment was erected by some person other than the railroad company and that some act of negligence on the part of the defendant, concurring with some act of negligence on the part of the person who built the embankment, caused damage to the plaintiffs, and the proof failing to show who did throw up the embankment, it was proper for the court to give the charge complained of. Patton v. Rucker, 29 Texas, 406; Middlebrook v. Zapp, 73 Texas, 31; Galveston, H. & S. A. Ry. Co. v. Scott, 18 Texas Civ. App., 321; Hall v. Jackson, 3 Texas, 311; Gipson v. Williams, 27 S. W., 824.

BOOKHOUT, ASSOCIATE JUSTICE.—This cause was tried as a

consolidation of two causes of the same style and being numbered as Nos. 7984 and 8184 on the docket of the District Court of Hill County, Texas. The allegations in each of the petitions were substantially as follows: During the years of 1905, 1906, 1907 and 1908, and for a long time prior to those years, F. L. Doke was the owner of a certain tract of 342 acres of land situated in Hill County, Texas, and being since November, 1903, traversed from north to south by the line of railway of the defendant company; during the years 1905, 1906 and 1907 the plaintiff, Moffert Rogers, cultivated all of such land, paying Doke as rental therefor one-third of the corn and one-fourth of the cotton raised thereon, and during the year of 1908 said land was thus cultivated by plaintiff J. J. Perkins; that prior to the construction of defendant's road and roadbed, etc., through Doke's land the water which "fell upon the same and that which fell upon the land adjacent thereto—that is to say, the water which fell upon the adjacent lands and ran onto the premises in question—would spread over the same evenly and gradually in a manner not to cause the soil to wash or gulleys and ditches to form thereon or the water to flow over and upon the same in a manner to damage the growing crops," etc., but that since the construction of the road, roadbed, etc., of the defendant company at that place, and by reason thereof, and by reason of the failure of the defendant to provide the necessary sluices, ditches, culverts, etc., as the natural lay and drainage of the land required, the natural course and drainage of the water falling upon said land, and the lands adjacent thereto, has been interfered with and changed to such an extent as to cause the same from a large scope of country to be concentrated and to be loosed upon plaintiff Doke's land at two points, to wit, at a point near the south line of said tract of land and at a point near the north line of the same, in such a manner and in such a volume and with such force as to wash the land at those points; to wash large gulleys and ditches across the land; and to wash sediment and noxious weeds and grass seeds and roots upon the same, and to wash down and destroy the crops—both the growing crops and the crops matured and ready for harvesting as well as the crops already harvested and remaining in the fields—during each of said years; that by reason of such negligence and faulty construction of defendant's road, roadbed, etc., said tract of land was damaged to the extent of $15 per acre during the years of 1905 and 1906, and that 100 acres of the same was damaged during the years of 1907 and 1908 to the extent of $55 per acre; that during the years of 1905, 1906, 1907 and 1908 the crops of cotton, corn, oats, etc., growing and grown upon said land were damaged and destroyed to the extent of $8906; that each and all of the plaintiffs have sustained damage by reason of the injuries to the crops, for which they prayed, and that the plaintiff Doke has sustained damage by reason of the injuries to the land, for which he prayed.

The defendant answered with a general demurrer, a general denial, and with several special answers setting up limitations; that the injuries complained of were inflicted by the overflowing of Ash Creek; that the injuries complained of were caused by plaintiffs'

negligent construction of embankments, ditches, etc., on said premises; that the injuries complained of were caused by the construction of embankments, etc., near to and adjoining the premises in question by persons unknown to defendant, etc. A trial resulted in a verdict for the defendant; motion for a new trial was duly filed and was by the court overruled, and an appeal perfected.

Error is assigned to the second paragraph of the court's charge reading as follows: "In this connection you are instructed that under the evidence you would not be authorized to return a verdict in favor of the plaintiff Doke for any damage resulting from injury to crop, and on the other hand you would not be authorized under the evidence to return a verdict for either of the other plaintiffs for any damage resulting from injury to the land, even if you should believe there was any such injury or injuries." It is contended that plaintiff Doke was entitled to recover for any damage resulting from a wrongful injury done to the crops growing upon the land.

Cause No. 7984 was instituted by plaintiff Doke on August 21, 1907, to recover damages for injuries inflicted to the premises and the crops growing thereon; plaintiff Rogers, the tenant, became a party on September 22, 1908. The petition recites that the plaintiff Doke sustained damages to the said above described premises, and both plaintiffs, F. L. Doke and Moffert Rogers, have sustained damages to the growing crops thereon, all of which was occasioned by the negligence of the defendant in the construction of its road both over and by the above described tracts of land. They prayed for judgment for damages in accordance with the allegations in the petition. There was evidence that during the years of 1905, 1906 and 1907 the premises in question were cultivated by Moffert Rogers and that he was to pay the plaintiff Doke one-third of the grain and one-fourth of the cotton raised thereon; and during the year 1908 plaintiff J. J. Perkins cultivated the land on the same terms. During November, 1905, fifty acres of corn which was matured and ready for gathering was destroyed by the water coming across the field from the railroad. This corn would have made from forty to forty-five bushels per acre and would have been worth in the market fifty cents per bushel and it would have cost five cents per bushel to have gathered and delivered the grain to the market. At harvest time in the year 1906, 12 acres of oats were destroyed by water. Those oats were cut down and shocked in the field at the time of their destruction. The oats would have made 108 bushels to the acre, and were worth forty-five cents per bushel in the field in the condition in which they were in at the time of their destruction. During the year 1906 fifty or sixty acres of corn were destroyed, and it was in the roasting ear at the time. The corn would have made from forty to forty-five bushels to the acre. The market value of the corn was fifty cents per bushel and it would have cost five cents per bushel to have gathered and marketed the corn. During the year 1906 forty acres of corn were destroyed about the 1st of May. Harvest time during the years 1905 and 1906 was in May and June. The contention of the appellee is that the evidence showing that plaintiff Doke let the land for the several years covered

by the consolidated causes to tenants and that the relationship of landlord and tenant existed between the plaintiff and said tenants, the owner of the land was not entitled to recover for any injury to the crops planted or grown on the premises during any of said years.

The question for us to determine is: Did the plaintiff Doke have an interest in the crops damaged by the overflow of the land? This question is to be determined from the contract between the landowner Doke and the respective tenants. If he had no interest therein the charge of the court is correct. If he had an interest in the crops it is not correct. In the case of Horseley v. Moss et al., 5 Texas Civ. App., 341 (23 S. W., 1116), this court held a contract by which the landlord was to furnish to the tenant the farm tools, team and feed to do the work in making the crop which was to be divided equally between the landlord and tenant, gives the owner of the land a specific interest in the crops, and not merely a landlord's lien. In the case of Tignor v. Toney, 13 Texas Civ. App., 518, the court of the First District held that where one farms the land of another under an agreement by which he is to give to the landowner a part of the crop raised on the land, he and such owner, in the absence of a stipulation in the contract otherwise providing, became tenants in common of the crops. To the same effect is the recent holding of this court in the case of Gulf, C. & S. F. Ry. Co. v. Caldwell, 102 S. W., 461, and Rogers v. Frazier Bros. & Co., 108 S. W., 727. This is in accord with the great weight of authority. 18 Am. & Eng. Enc. Law, p. 274 (2d ed.). There is nothing in the opinion in the case of Texas & P. Ry. Co. v. Bayliss, 62 Texas, 575, which contravenes this holding. It follows the charge was error.

We are also of the opinion the court erred in instructing the jury that "the evidence in this cause having shown that if any cotton and oats or either was injured, that the said crops were immature and ungathered in the field, and the evidence failing to show what would be the cost of cultivating and harvesting the same, you are instructed that you can not find any damage as to injury to the oats or cotton." There was evidence that would have justified a finding that at least a part of the oats had matured at the time they were destroyed and were in shock in the field and that these oats were worth forty-five cents per bushel in the field. There was also evidence that some of the cotton grown on the premises in 1907 was destroyed after it had matured and that cotton was at the time worth nine cents per pound.

The specific ground of negligence relied upon by appellant is that the appellee in erecting its road caused the waters of Ash Creek "to be diverted from their natural course and caused to be gathered in a body and turned loose on the land of Doke at two points, to wit: at a point near the south line of said tract of land and at a point near the north line of the same, in such a manner and in such a volume and with such force as to wash the land at those points; to wash large gulleys and ditches across the land; and to wash sediment and noxious weeds and grass seeds and roots upon the same; and to wash down and destroy the crops." There was evidence showing that this change resulted from an embankment or dump thrown

up on the northwest side of the opening under the bridge over the creek. This embankment was put there after the construction of the railroad. Appellant contends that the railroad erected the embankment, while the appellee insists that there is no evidence showing that it was constructed by the railroad. The court charged the jury as follows: "You are further instructed that the defendant would not be liable for any sum for any damage that may have resulted from inundation of the land in question if such inundation resulted from an embankment if you should believe that said embankment was not upon the right of way, for the reason that if you should believe that said embankment which caused said inundation of land was not upon the right of way there is no evidence which tends to show that the defendant either built or caused the same to be built." The giving of this charge is assigned as error. The evidence shows that this embankment is the cause of the water being diverted upon the land of appellant. There is evidence tending to show that some part of this embankment was on appellee's right of way. If defendant constructed or maintained any part of the embankment on its right of way it would, at least, be responsible for such damages as were caused by overflows resulting from such part of the embankment. If a part of the embankment was on appellee's right of way this charge was upon the weight of evidence and constituted error. Having held there was evidence tending to show this fact, we hold the charge was error.

For the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*